## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

MARCUS EVANS,

*Plaintiff-Appellee*,

v.

LORNETTA SMITH, *et al.*

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Arkansas
4:20-cv-173-KGB-BBM
Hon. Kristine G. Baker

### APPELLEE'S ANSWERING BRIEF

Samuel Weiss
D Dangaran
RIGHTS BEHIND BARS
1800 M St NW
Front 1 # 33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Attorneys for the Plaintiff-Appellee Marcus Evans*

# SUMMARY OF THE CASE

Defendants seek a reversal of the district court's denial of qualified immunity on Plaintiff Marcus Evans's Eighth Amendment excessive force claim. Evans alleges that Defendants left excessively tight leg restraints on him for at least fifteen hours when there was no longer a need for him to be restrained. Binding precedent from this circuit holds that prolonged restraints without penological justification can be excessive force. Courts consider whether the restraints were applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Here, the district court correctly found a material dispute of fact over this factual question and concluded that a jury could find that Evans's leg restraints were kept on him maliciously and sadistically. Further, the aforementioned precedent clearly establishes the right for prisoners to not be kept in restraints for a prolonged amount of time with no penological reason. For these reasons, the district court properly denied summary judgment and denied qualified immunity to Defendants.

Defendants primarily challenge the district court's refusal to resolve factual disputes in their favor, arguments that are not properly within the scope of appeal of an interlocutory appeal of a qualified immunity denial. To the extent the Court has jurisdiction over any of Defendants' arguments, they misconstrue or ignore binding precedent. Plaintiff requests a fifteen-minute oral argument to ensure proper resolution of the issues over which this Court has jurisdiction.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................... ii

TABLE OF CONTENTS .................................................................... iii

TABLE OF AUTHORITIES ................................................................ iv

SUPPLEMENTAL JURISDICTIONAL STATEMENT .......................................... 1

STATEMENT OF THE ISSUES ............................................................. 2

STATEMENT OF THE CASE .............................................................. 3

SUMMARY OF THE ARGUMENT ........................................................ 10

STANDARD OF REVIEW ................................................................. 11

ARGUMENT ............................................................................ 11

    I.   This Court Lacks Jurisdiction Over Defendants' Argument. ..................... 11

    II.   Failing to Remove a Prisoner from Shackles Can Constitute Excessive Force. ........................................................................... 14

    III.   Defendants Err in Focusing on the Extent of Evans's Injury. ................... 21

    IV.   Defendants Have Forfeited Any Other Argument for Reversal. ............... 22

CONCLUSION ........................................................................... 24

CERTIFICATE OF SERVICE .............................................................. 25

CERTIFICATE OF COMPLIANCE ......................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020 (8th Cir. 2021)...........11

*Brosseau v. Haugen*, 543 U.S. 194 (2004).................................................9

*Burnikel v. Fong*, 886 F.3d 706 (8th Cir. 2018)......................................12

*Chay-Velasquez v. Ashcroft*, 367 F.3d 751 (8th Cir. 2004) ..............................2, 22

*Com. Union Ins. Co. v. Schmidt*, 967 F.2d 270 (8th Cir. 1992) ........................3, 11

*Crocker v. Beatty*, 995 F.3d 1232 (11th Cir. 2021)...................................19

*Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008) ...............................19, 20

*Edwards v. Byrd*, 750 F.3d 728 (8th Cir. 2014) .....................................12

*Erickson v. Pardus*, 551 U.S. 89 (2007)..............................................5

*Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361 (8th Cir. 2022).......22

*Hope v. Pelzer*, 536 U.S. 730 (2002) .............................................8, 9, 18

*Hudson v. McMillan*, 503 U.S. 1 (1992) .................................8, 21, 23, 24

*Jackson v. Gutzmer*, 866 F.3d 969 (8th Cir. 2017) ...............................7, 8

*Norton v. City of Marietta*, 432 F.3d 1145 (10th Cir. 2005)...................19

*Patel v. Lanier County*, 969 F.3d 1173 (11th Cir. 2020) ..................18, 19

*Roberts v. City of Omaha*, 723 F.3d 966 (8th Cir. 2013) .........................1

*Smith v. Andrews*, 75 F.4th 805 (8th Cir. 2023).....................................5

*Stewart v. Precythe*, 91 F.4th 944 (8th Cir. 2024) ........................2, 15, 17

*Stewart v. Rise, Inc.*, 791 F.3d 849 (8th Cir. 2015)....................................................24

*Thompson v. Monticello*, 894 F.3d 993 (8th Cir. 2018) ...............................2, 11, 12

*Thompson v. Murray*, 800 F.3d 979 (8th Cir. 2015) ......................................1, 2, 12

*United States v. Evans*, 48 F.4th 888 (8th Cir. 2022)...................................................5

*United States v. Hill*, 99 F.4th 1289 (11th Cir. 2024) .............................................17

*Walker v. Bowersox*, 526 F.3d 1186 (8th Cir. 2008)........................................passim

*Washington v. Ondrejka*, 822 F. App'x 104 (3d Cir. 2020)....................................18

*Welch v. Dempsey*, 51 F.4th 809 (8th Cir. 2022) ....................................................13

*Whitley v. Albers*, 475 U.S. 312 (1986)..............................................................9, 21

*Wilkins v. Gaddy*, 559 U.S. 34 (2010)........................................................2, 21, 22

*Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996) ................................................18

*Young v. Martin*, 801 F.3d 172 (3d Cir. 2015)........................................................18

## Other Authorities

Eric S. Dreiband, Assistant Att'y Gen., U.S. Dep't of Just. Civ. Rts. Div., Notice
Regarding Investigation of the Boyd County Detention Center (Feb. 28, 2019),
https://www.justice.gov/opa/press-release/file/1150471/dl................................20

## SUPPLEMENTAL JURISDICTIONAL STATEMENT

Defendants' jurisdictional statement is incomplete. This Court has jurisdiction to consider interlocutory appeals on the issue of qualified immunity, but that "interlocutory review is narrow and limited." *Roberts v. City of Omaha*, 723 F.3d 966, 972 (8th Cir. 2013). This Court is "constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision." *Thompson v. Murray*, 800 F.3d 979, 983 (8th Cir. 2015). This Court has jurisdiction only over the purely legal question of whether, construing the facts just as the district court did, fact questions remain concerning a clearly established constitutional violation.

# STATEMENT OF THE ISSUES

I.     **Whether this Court has jurisdiction to reconsider the district court's factual conclusion that Defendants subjected Evans to "force."**

        *Thompson v. Murray*, 800 F.3d 979 (8th Cir. 2015).

        *Thompson v. Monticello*, 894 F.3d 993 (8th Cir. 2018).

II.    **Whether the failure to act can constitute "force" under the Eighth Amendment.**

        *Stewart v. Precythe*, 91 F.4th 944 (8th Cir. 2024).

        *Walker v. Bowersox*, 526 F.3d 1186 (8th Cir. 2008).

III.   **Whether a plaintiff in an Eighth Amendment excessive force claim must demonstrate a significant injury.**

        *Wilkins v. Gaddy*, 559 U.S. 34 (2010).

IV.   **Whether Defendants have forfeited any other argument for reversal.**

        *Chay-Velasquez v. Ashcroft*, 367 F.3d 751 (8th Cir. 2004).

## STATEMENT OF THE CASE

### I.      Factual History[1]

Plaintiff Marcus D. Evans filed a pro se complaint against officers employed

by the Arkansas Division of Correction ("ADC"), alleging, as relevant here,[2]

excessive force for keeping his legs in metal restraints for eighteen hours, causing

him injury. *See* App. 502, Add. 12, R. Doc. 106, at 1.[3] According to his complaint,

Evans was sitting with handcuffs and leg shackles. Supp. App. 7, R. Doc. 25, at 5.

Defendant Telicia Mothershed was supervising the area, and Defendants Lorenetta

Smith[4] and Marquis Taylor joined her. Supp. App. 8, R. Doc. 25, at 6. Defendants

---

[1] Because this Court must "believe the evidence of the party opposing summary judgment" and draw "all justifiable inferences … in that party's favor," *Com. Union Ins. Co. v. Schmidt*, 967 F.2d 270, 272 (8th Cir. 1992), all disputed facts are resolved in favor of Evans.

[2] The district court granted partial summary judgment on Evans's conditions-of-confinement claim. *See* App. 446, R. Doc. 96, at 1. In doing so, the court agreed with the magistrate court's conclusion that the officers were shielded against those claims by qualified immunity. *See id.*; App. 433, R. Doc. 94, at 10. That decision is not part of this appeal.

[3] Per 8th Cir. R. 28A(j), Plaintiff cites to appellant's addendum and the record below in parallel citations where relevant.

[4] Defendant Smith's first name has been spelled variably as "Lornetta," *see* App. 446, R. Doc. 96, at 1; *see also* App. 502, Add. 12, R. Doc. 106, at 1, and "Lorenetta," *see* Supp. App. 8, R. Doc. 25, at 6; Appellants' Opening Brief ("AOB") at 3. Plaintiff uses the spelling as written in the notice of appeal; the caption as currently written on CM/ECF—which Plaintiff uses in the caption of this brief for consistency—would seem misspelled. *See* Notice of Appeal, 8th Cir. Doc. 5387990, at 64 (4/29/24).

Taylor and Smith escorted Evans to his cell with the handcuffs and leg shackles still on and "excessively tight." *Id.* Once they reached his cell, they put him into his cell, closed the door, and removed his handcuffs through the door. *Id.* Evans repeatedly asked Defendant Taylor, who removed his handcuffs, to reopen the door to remove the leg shackles, but he and Defendant Smith refused. *Id.* Evans alleges that one of Defendants Smith or Taylor then told him, "I told you I was gone get you," and "fuck you, nigger you staying in them leg irons." Supp. App. 9, R. Doc. 25, at 7. Defendant Mothershed was also present and did not intervene; upon asking her to remove his leg shackles, she said, "I did not put you in your cell." *Id.* After the three officers left, another officer contacted them to ask them to remove Evans's leg restraints, but they did not return. Supp. App. 10, R. Doc. 25, at 8. Because no one removed his leg shackles before Evans had to shower, Evans "was forced to cut his clothing off with a razor blade while at the time experiencing extreme pain due to the swelling of his legs" from the "extremely tight" leg irons. Supp. App. 11–12, R. Doc. 25, at 9–10. Besides the swelling, Evans also experienced "numbness mixed with burning pain," which "caus[ed him] to lose his balance" and fall over. Supp. App. 12, R. Doc. 25, at 10. Lt. Bivens, who is not a named defendant in this case, came to Evans late that night after a shift change and took pictures of his injured legs and the cut up clothing, before escorting Evans to the infirmary with three other officers. *Id.*

Defendants Mothershed, Smith, and Taylor (collectively, "ADC Defendants") "had previously been in multiple verbal arguments with" Evans in which they threatened to physically harm him "if and/or when the opportunity presented itself." Supp. App. 8, R. Doc. 25, at 6 (emphasis omitted). Based on these previous representations, Evans "asserts that the ADC Defendants were motivated to leave him in leg restraints." App. 502, Add. 12; R. Doc. 106, at 1; *see* Supp. App. 9, R. Doc. 25, at 7 (alleging malicious intent). Evans also alleges that the ADC Defendants showed willful intent by turning in a separate pair of leg irons before their shift ended and falsifying records to conceal that a pair had been left on Evans.[5] *See* Supp. App. 19, R. Doc. 25, at 17. Based upon these allegations, Evans brought an Eighth Amendment claim for excessive force under 42 U.S.C. § 1983,[6] Supp. App. 14–16, R. Doc. 25, at 12–14, and sought compensatory and punitive damages against the ADC Defendants, Supp. App. 25–26, R. Doc. 25, at 23–24.

---

[5] Although this fact is in a separate section of the complaint, a *pro se* complaint should be liberally construed, such that the facts stated under another count that are relevant to his excessive force claim can be read as background for that claim, as well. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Smith v. Andrews*, 75 F.4th 805, 808 (8th Cir. 2023); *United States v. Evans*, 48 F.4th 888, 891 n.3 (8th Cir. 2022) ("Evans's wide ranging response ... preserved this issue.").

[6] Separately, Evans also brought state tort claims of assault and battery as related to the same allegations. Supp. App. 5–7, 15, 16–18, R. Doc. 25, at 3–5, 13, 14–15. Those claims are not on appeal.

## II.    Procedural History

The ADC Defendants filed a motion for summary judgment, App. 448, R. Doc. 98, at 1, arguing that they "did not violate Plaintiff's constitutional rights and are therefore entitled to qualified immunity." App. 456, R. Doc. 100, at 1. Their motion did not deny that Defendants Smith and Taylor left the leg restraints on Evans. *See* App. 458, R. Doc. 100, at 3. They denied that Defendant Mothershed was present at Plaintiff's cell or communicated with him whatsoever about his leg restraints. *Id.* They acknowledged that Plaintiff's injuries were so severe that he was prescribed pain medication for five days. App. 459, R. Doc. 100, at 4. Evans further disputed the ADC Defendants' statements of facts as related to their conversations with him and their refusal to remove his leg restraints. *See* App. 482, 487, Supp. Add. 5, 10, R. Doc. 103, at 4, 9.

The ADC Defendants made several alternative arguments in support of their qualified immunity defense in their motion for summary judgment. On the first prong of qualified immunity, they argued that excessive force was not used against Evans. App. 462, R. Doc. 100, at 7. First, they denied that Evans alleged or proved *any* use of force, arguing that "[t]here simply was no offensive touching pled here whatsoever."[7] App. 463, R. Doc. 100, at 8.

---

[7] This argument strains credulity. It is an obtuse, rhetorical argument at best, given Defendants' concession that applying passive restraints are not only a use of force,

Alternatively, they contended that any force applied to Evans "was used in a good-faith effort to maintain discipline." *Id.* They suggested that the only force applied was used by Mothershed when she restrained Evans initially. App. 464, R. Doc. 100, at 9. They characterized their failure to remove restraints as "de minimis use of force" at most, *id.*, and argued that "no reasonable jury could conclude that Plaintiff was injured," *see* App. 464, R. Doc. 100, at 10.

As to the second prong of qualified immunity, they argued that it was not clearly established that the failure to remove Evans's leg restraints was a constitutional violation, App. 465–66, R. Doc. 100 at 11–12, despite conceding that "[p]assive restraint use can ... create an excessive use of force claim," App. 465, R. Doc. 100, at 11, and comparing Evans's case to this Court's opinions in *Walker v. Bowersox*, 526 F.3d 1186 (8th Cir. 2008), and *Jackson v. Gutzmer*, 866 F.3d 969 (8th Cir. 2017). *See* App. 465–66, R. Doc. 100 at 11–12.

In opposition, Evans argued that "Defendants acknowledge that there was no emergency situation in Evans's case" and that "there was no penological justification for" leaving him in leg irons. App. 473, R. Doc. 102, at 5. Evans pointed out that "[t]he parties' testimony reveals that" "[t]here is a material factual dispute as to whether Mothershed, Smith, and Taylor left Evans in leg irons 'in a good-faith effort

---

but "can ... create an excessive use of force claim." *See* App. 466, R. Doc. 100, at 11.

to maintain or restore discipline, or maliciously and sadistically to cause harm.'" App. 474, R. Doc. 102, at 6 (quoting *Hudson v. McMillan*, 503 U.S. 1, 6–7 (1992)). Evans also argued that "[p]rolonged restraints without penological justification have been held to be excessive force under the Eighth Amendment." App. 475–76, R. Doc. 102 at 7–8 (citing *Hope v. Pelzer*, 536 U.S. 730 (2002); *Walker*, 526 F.3d at 1188).

The magistrate judge issued a recommended disposition finding "material factual disputes regarding" "whether Defendants 'maliciously and sadistically' left the restrains on Evans 'to cause harm'" and that a reasonable jury could find that the shackles were left on Evans to cause harm. App. 493, Add. 6, R. Doc. 104, at 6 (quoting *Jackson*, 866 F.3d at 974). Because it was not permissible at this stage in the proceedings to "resolve this material factual dispute," App. 494, Add. 7, R. Doc. 104, at 7, the magistrate judge recommended finding that Defendants violated Evans' right against excessive force at step one of the qualified immunity analysis, App. 495, Add. 8, R. Doc 104 at 8. But the magistrate judge nonetheless recommended granting qualified immunity because other restraint cases had differentiating factors and the facts alleged here were not "so 'repugnant to the conscience of mankind' or such an obvious 'malicious and sadistic' infliction of pain to negate the need for 'a body of relevant case law.'" App. 497, Add. 10, R. Doc. 104, at 10 (quoting *Jackson*, 866 F.3d at 974, 978; *Whitley v. Albers*, 475 U.S. 312,

321 (1986); *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *Hope*, 536 U.S. at 730). Evans filed objections to the recommended disposition on the second prong of qualified immunity, arguing the magistrate judge's reading of the relevant cases was too narrow. App. 499–501, Supp. Add. 11–13, R. Doc. 105, at 1–3.

The district court agreed with Evans and declined to adopt the magistrate judge's recommended disposition. App. 502, Add. 12, R. Doc. 106, at 1. The district court found that the case law "clearly established that prolonged restraints without penological justification can be excessive force." App. 505, Add. 15, R. Doc. 106, at 4. The district court found "sufficient case law to have put the ADC Defendants on notice that leaving an inmate in restraints for 15 hours or more after heated arguments between the ADC Defendants and the inmate resulting in threats of harm to the inmate by the ADC Defendants when there is no penological need for restraint could violate the Eighth Amendment." App. 506, Add. 16, R. Doc. 106, at 5. The district court also rejected the magistrate judge's alternative determination that Evans's injuries failed to show an obvious, malicious, and sadistic infliction of harm, finding "there are sufficient facts to establish that Mr. Evans's injuries are more than *de minimis*." *Id.*

The Defendants timely appealed the district court's denial of qualified immunity. App. 508, R. Doc. 109.

# SUMMARY OF THE ARGUMENT

This Court should affirm the district court's denial of qualified immunity. The district court found that there was a material dispute of fact over whether Evans was subjected to malicious and sadistic treatment when Defendants refused to remove his leg restraints for at least fifteen hours. Nevertheless, Defendants have improperly raised numerous factual questions on appeal, claiming there was insufficient evidence to support the district court's findings. This Court lacks jurisdiction over these arguments, which effectively comprise Defendants' entire opening brief. For this reason alone, this Court should affirm.

Should this Court reach the qualified immunity questions, there are no grounds to reverse. Defendants claim that there can be no "force" without an affirmative touch and therefore that Plaintiff's allegations regarding the prolonged use of restraints cannot amount to an excessive force claim. This action–inaction distinction is inconsistent with this Court's Eighth Amendment precedent. Because Defendants do not present any argument in the alternative accepting the proposition that a prolonged overuse of restraints can be an actionable "force," they forfeited any other argument. But even had they not, the case law cited by the district court— which Defendants attempt to distinguish—supports only the conclusion that prolonged restraint without penological justification can be excessive force. Thus,

Plaintiff's right against excessive force under the Eighth Amendment was clearly established by this Court's precedent at the time of the incident.

## STANDARD OF REVIEW

This Court reviews de novo a district court's ruling on summary judgment. *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021). "Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). "This means that a district court should not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Id.* (internal quotation marks omitted). Because this Court must "believe the evidence of the party opposing summary judgment" and draw "all justifiable inferences … in that party's favor," *Com. Union Ins. Co.*, 967 F.2d at 272, all disputed facts are resolved in favor of Evans.

## ARGUMENT

### I.     This Court Lacks Jurisdiction Over Defendants' Argument.

Despite a general rule that this Court lacks jurisdiction over the denial of a motion for summary judgment, this Court "may conduct a limited interlocutory review of a district court's order denying summary judgment on the basis of qualified immunity." *Thompson v. Monticello*, 894 F.3d 993, 997 (8th Cir. 2018). This jurisdiction "extends only to abstract issues of law, not to determinations that

the evidence is sufficient to permit a particular finding of fact after trial." *Id.* (quoting *Edwards v. Byrd*, 750 F.3d 728, 731 (8th Cir. 2014)). Such a review "is thus 'limited to determining whether all of the conduct that the district court deemed sufficiently supported for purposes of summary judgment violated the plaintiff's clearly established federal rights,'" *id.* at 997–98 (quoting *Edwards*, 750 F.3d at 731), so this Court "accept[s] as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed," *id.* at 998 (quoting *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018)); *see also Thompson v. Murray*, 800 F.3d 979, 983 (8th Cir. 2015).

Although disagreeing on the outcome of the case, both the magistrate judge and the district court necessarily agreed that Defendants' refusal to remove Evans's leg chains constituted force as a factual matter. The magistrate judge determined that "a reasonable jury could conclude that Defendants 'maliciously and sadistically' left Evans in leg restraints to cause harm," ruling for Evans on the first step of the qualified immunity analysis. App. 494, Add. 7, R. Doc. 104, at 7. The district court held that it was clearly established that "prolonged restraints without penological justification can be excessive force," ruling for Evans on both prongs. App. 505, Add. 15, R. Doc. 106, at 4. Both the magistrate judge and the district court necessarily assumed that Defendants used some force on Evans.

Defendants take issue with the district court's conclusion not via any abstract question of law but rather with the factual characterization of whether refusing to remove Evans's leg chains constituted "force." Making this clear, Defendants' opening brief specifically invokes the sufficiency of the evidence standard in arguing why they are entitled to qualified immunity. "If Evans fails to meet proof with proof," Defendants write, "meaning he fails to present sufficient evidence to establish an essential element of his claim, then Appellants are entitled to judgment as a matter of law." Appellants' Opening Brief ("AOB") at 11; *see also id.* ("[N]o reasonable fact finder could find that Appellants intentionally used force against him, when Evans himself says that Appellants failure to remove his leg restraints is the basis for his case."). On an interlocutory appeal of qualified immunity, however, this Court "lack[s] jurisdiction to consider ... question[s] of evidence sufficiency." *Welch v. Dempsey*, 51 F.4th 809, 812 (8th Cir. 2022). This argument is almost exclusively the one Defendants press. *See, e.g.*, AOB 6 ("This appeal focuses on whether simply leaving an inmate in restraints without more can be excessive use of force."). Because the argument sounds in factual characterization and evidentiary sufficiency, this Court should dismiss Defendants' appeal for lack of appellate jurisdiction.

## II.  Failing to Remove a Prisoner from Shackles Can Constitute Excessive Force.

Even if this Court concludes that it has jurisdiction over Defendants' action–inaction argument, this Court should reject it. Defendants cite no authority from any court that the failure to remove a restraint "cannot constitute" excessive force under the Eighth Amendment, no matter the circumstances, because it is merely a "failure to take an action" rather than an affirmative application of force. AOB 11. By contrast, a wide range of authority from this Court and other federal courts of appeals dealing with restraints such as shackles, restraint chairs, and handcuffs make clear that a prolonged period in a stressful position can constitute force.

This Court's case law shows a clear rejection of the action–inaction distinction in this context. *Walker v. Bowersox* is illustrative. 526 F.3d 1186 (8th Cir. 2008). In *Walker*, this Court held that restraining a prisoner to a bench for 24 hours "was an excessive and disproportionate use of force." *Id.* at 1188. Defendants mischaracterize *Walker* by arguing that the plaintiff had an excessive force claim for restraining him to a bench in the first instance and, separately, "a deliberate indifference claim for the duration and conditions that he was exposed to while he was restrained." AOB 16. But *Walker* never mentioned a conditions of confinement claim nor its mens rea standard, deliberate difference. And this Court was entirely clear that it viewed the conditions the plaintiff experienced while restrained as part of an excessive force claim. *Walker*, 526 F.3d at 1188 (describing the conditions he

14

experienced while restrained and finding "trialworthy issues as to whether imposing such conditions on Walker to make him accept a specific cell mate was an excessive and disproportionate use of force"); *see also id.* at 1190 ("Accordingly, we reverse the grant of summary judgment on Walker's claim for damages for the excessive use of force in the restraint-bench incident...."). In addition to demonstrating that Defendants' purported distinction between action and inaction has no basis in case law, *Walker* shows that it has been clearly established in this Circuit since at least 2008 that persisting in restraining a prisoner after "any threat or need for force" was removed constitutes excessive force under the Eighth Amendment. *Id.* at 1188. As the district court held, Defendants' arguments to the contrary, repeated on appeal, construe *Walker* too narrowly. App. 505, Add. 15; R. Doc. 106 at 4. *Cf.* AOB 16–17.

A recent opinion from this Court, *Stewart v. Precythe*, shows the doctrine's consistency on the action–inaction point in the years since *Walker*. 91 F.4th 944 (8th Cir. 2024). The plaintiff sued a number of defendants for excessive force and one, the Director of the Missouri Department of Corrections, filed an interlocutory appeal based on qualified immunity as to her supervisory liability. *Id.* at 946. She argued that merely enacting a policy permitting for the use of restraint benches—her only personal involvement with the plaintiff's case—was not a clearly established constitutional violation, and this Court agreed. *Id.* at 950, 952–53.

This Court's opinion granting qualified immunity to the Director was preoccupied with duration—the length of time the policy permitted prisoners to be kept in restraint chairs before staff removed them. *Id.* at 951 ("Further, where this Court has found that correctional officials were not entitled to qualified immunity, the duration of the restraint differed markedly from the alleged duration of the restraint here." (citing *Walker*, 526 F.3d at 1188)); *id.* ("Notably, the alleged duration of the restraint here is significantly shorter than the durations in *Key* [*v. McKinney*, 176 F.3d 1083 (8th Cir. 1999),] and *Gutzmer....*"); *id.* at 952 ("[O]ur Circuit's case law has never held that the use of restraint benches is per se unconstitutional, and it has found restraint policies involving longer durations than the one at issue here to pass constitutional muster."). This Court's analysis is irreconcilable with Defendants' position, because if inaction cannot constitute force then the duration of restraint would be entirely irrelevant to the analysis. According to Defendants, the failure to remove someone from a restraint chair is an absence of force whether the prisoner has been restrained for a minute, a day, or a week and therefore inactionable.

Defendants describe *Stewart* but misunderstand it. Defendants point to this Court's statement that the plaintiff's allegations of excessive force were "focused entirely on the degree of force," those being the "the manner and duration of the restraint that he endured." AOB 17. Defendants argue that this Court was distinguishing between excessive force claims (where duration is irrelevant, they

argue) and conditions of confinement claims, but this Court meant something different. As described above, the lone defendant in *Stewart* was the director of a statewide agency and her only personal involvement was in the promulgation of the restraint policy. This Court granted qualified immunity to her because the plaintiff's allegations focused not on the mere existence of a policy permitting restraints, but instead on "the manner and duration of the restraint that he endured." *Stewart*, 91 F.4th at 950. This statement was therefore simply explaining why the complaint's allegations did not support a plausible claim that the Director was liable for the force used; *Stewart* cannot support Defendants' claim here regarding the direct involvement of officers in refusing to remove the restraints.

Other courts of appeals have reached the same conclusion. Although most have done so by implication, the Eleventh Circuit addressed Defendants' argument directly. In *United States v. Hill*, the defendant "argue[d] that restraint-chair use is not 'force' in the first place, so it could not have been excessive force," analogizing a restraint chair to "passive restraints" like handcuffs and leg shackles. 99 F.4th 1289, 1300 (11th Cir. 2024). The court of appeals rejected the argument, recognizing that "[e]ven if restraint chairs were 'passive restraints,'" the court had long applied "the constitutional use-of-force framework" to all kinds of such restraints, from shackles to handcuffs. *Id.*

Other courts of appeals have declined to distinguish between action and inaction in excessive force claims. In *Young v. Martin*, for instance, the Third Circuit reversed a district court that had granted summary judgment to prison officials on an excessive force claim. 801 F.3d 172 (3d Cir. 2015). In so doing, it viewed as relevant to "whether [plaintiff] was subjected to 'a substantial risk of physical harm'" that officials "not only placed [plaintiff] in the restraint chair but did so for nearly fourteen hours." *Id.* at 182 (quoting *Hope*, 536 U.S. at 738). Given this "extreme confinement," the court of appeals concluded that the plaintiff was "entitled to have a jury" resolve his excessive force claim. *Id.*; *see also Washington v. Ondrejka*, 822 F. App'x 104, 107–08 (3d Cir. 2020) (ruling for a defendant in an excessive force claim involving a restraint chair, distinguishing the case from *Young* because of, *inter alia*, the shorter duration in the restraint chair).

In *Williams v. Benjamin*, a plaintiff alleged that both the initial use of restraints and mace and then the continued use of restraints for eight hours constituted excessive force. 77 F.3d 756, 764 (4th Cir. 1996). The Fourth Circuit held that the initial use of mace and restraints did not constitute excessive force but that maintaining the restraints for eight hours did, indicating that inaction alone can sustain an excessive force claim. *See id.* at 765.

Other forms of inaction have similarly been held to constitute excessive force. In *Patel v. Lanier County*, the Eleventh Circuit considered whether placing a

detainee in a hot van for roughly two hours—half of that time alone and unsupervised—constituted excessive force. 969 F.3d 1173, 1178 (11th Cir. 2020). The court held that the plaintiff had established a constitutional violation but that the violation was not clearly established at step two of the qualified immunity inquiry. *Id.* at 1184; *see also Crocker v. Beatty*, 995 F.3d 1232, 1250 (11th Cir. 2021) (writing in another hot car case that "[i]n *Patel*, the temperature was about the same—85°— but the duration of detention was much longer—two hours. So, the amount of force used in *Patel* was far greater.").

Courts have also considered whether officers were liable for excessive force when they failed to decontaminate prisoners or detainees after using pepper spray on them. In *Norton v. City of Marietta*, for instance, the Tenth Circuit held that the objective prong of the excessive force test turned "in part on how long plaintiff was sprayed" but also on "whether he was adequately irrigated afterwards or left to suffer unnecessarily." 432 F.3d 1145, 1154 (10th Cir. 2005). Concluding there were contested material facts on both questions, the court reversed the district court's grant of summary judgment to the officers and remanded. In *Danley v. Allen,* the Eleventh Circuit concluded that an officer's "initial pepper spraying itself was not excessive force" but that leaving the plaintiff in a confined space for twenty minutes without decontamination following the spraying was. 540 F.3d 1298, 1308 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701,

709 (11th Cir. 2010). "[S]ubjecting a prisoner to special confinement," the court concluded, "that causes him to suffer increased effects of environmental conditions—here, the pepper spray lingering in the air and on him—can constitute excessive force." *Id.*

Courts have therefore recognized a wide variety of situations in which "*not touching a person,*" AOB 11 (emphasis in original), constitutes excessive force.[8] Failing to decontaminate after pepper spraying, failing to mitigate the heat in or remove a prisoner from a hot transport van, failing to remove a prisoner from "passive restraints"—all can constitute "force" and therefore excessive force. As Defendants write, "This appeal focuses on whether simply leaving an inmate in restraints without more can be excessive use of force." AOB 6. The answer is yes, and this Court need not go any further in affirming.

---

[8] So has the Department of Justice. In investigations under the Civil Rights of Institutionalized Persons Act, the Department has issued notice to correctional institutions it believes are violating the Eighth Amendment's guarantee against excessive force through the use of prolonged restraints. *See, e.g.*, Eric S. Dreiband, Assistant Att'y Gen., U.S. Dep't of Just. Civ. Rts. Div., Notice Regarding Investigation of the Boyd County Detention Center (Feb. 28, 2019), https://www.justice.gov/opa/press-release/file/1150471/dl (sending a letter to the Judge Executive of Boyd County, Kentucky, who manages the Boyd County Detention Center, and attaching a report that details the U.S. DOJ's findings of constitutional violations, including the unconstitutionality of the detention center's use of restraints at page 8 of the attachment, *id.* at 12).

### III. Defendants Err in Focusing on the Extent of Evans's Injury.

In *Wilkins v. Gaddy*, the Supreme Court summarily reversed a Fourth Circuit decision holding that a plaintiff in an Eighth Amendment excessive force case had only *de minimis* injuries and therefore affirming the dismissal of his claim. 559 U.S. 34, 36 (2010) (per curiam). The Court held that excessive force claims must be "based on the nature of the force rather than the extent of the injury." *Id.* at 34 (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). Injury is not irrelevant to this inquiry, the Court explained. For instance, the extent of the injury may help demonstrate "whether the use of force could plausibly have been thought necessary in a particular situation." *Id.* at 37 (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted). Injury may also "provide some indication of the amount of force" the defendants applied. *Id.*

Defendants argue that Evans suffered no "discernable injury," AOB 12, presumably plucking the phrase from *Wilkins*, where the Court wrote, "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38. This argument necessarily involves resolving factual issues against Plaintiff as to the extent of his injuries, but it also misstates the law. Defendants write that discernible injury is an "element" of an excessive force claim. AOB 13–14. It is not. Rather, as *Wilkins* explained, injury is relevant only insofar as it illuminates the amount of force used

against the plaintiff. And as the sentences in *Wilkins* following the line quoted by Defendants made clear, "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." 559 U.S. at 38. Here, Defendants do not even argue that the force used was necessary, and therefore there is no dispute about the gratuitousness of the use of force that the scope of Evans's injury might illuminate.

## IV. Defendants Have Forfeited Any Other Argument for Reversal.

Defendants forfeit any arguments that they do not meaningfully make in their opening brief. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004); *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1367 n.2 (8th Cir. 2022). As described above, as to Defendants Smith and Taylor, Defendants argue only that *no* force occurred. AOB 10–11. They never argue that even if Defendants' decision to leave on the restraints constituted force that the amount of force was *de minimis*. *See, e.g.*, AOB 11 ("It is hard to conceptualize a more minimal use of force than not touching a person."), 12 ("Evans cannot show even a de minimis injury."). They have therefore forfeited any argument that it was.[9]

---

[9] Their argument that "[t]he initial application of restraints was done in good faith" misses the mark. AOB 11. Evans's claim against Defendant Mothershed, like the other two Defendants, is based on Mothershed's alleged failure to remove the leg

Even if Defendants had not forfeited a challenge to the district court's basis for its decision, this Court should still affirm. Excessive force claims are unusual in that they have a subjective component much harder to meet than other Eighth Amendment claims but an objective component that is far less so. Subjectively, prison officials must be malicious and sadistic, acting for the very purpose of causing harm; objectively, anything above a *de minimis* amount of force is actionable. The Supreme Court described this balance in *Hudson v. McMillian*, explaining that the Eighth Amendment applies only to malicious and sadistic actions in the excessive force context, but that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." 503 U.S. at 9. "This is true," the Court wrote, "whether or not significant injury is evident" because the Eighth Amendment would otherwise "permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*; *see also id.* at 24–25 (Thomas, J., dissenting) (hypothesizing that the (in his opinion) too high subjective standard is compensating for the (in his opinion) too low objective standard).

---

restraints hours after the initial application. *See* App. 486, Supp. Add. 9, R. Doc. 103, at 8 (denying Defendants' statement that "Mothershed did not hear Plaintiff call out or inform her that his leg restraints had not been removed"). The initial application is simply irrelevant to the present inquiry.

Defendants here have not contested whether the challenging subjective standard has been met here. This Court is therefore left only with the easier question of whether leaving someone with their legs shackled together for at least fifteen hours, causing the wearer to suffer a "10/10" level of pain rises above the *de minimis* level of a push or a shove. *See id.* at 11 (majority) (explaining that the prohibition on excessive force arises from the broader Eighth Amendment prohibition on the "unnecessary and wanton infliction of *pain*") (emphasis added). Defendants provide no evidence that Evans was not in pain so instead characterize his testimony that he was in pain as "self-serving." Almost all of the remaining evidence in the case are characterizations by prison officials, which are therefore as self-serving as Evans's testimony. More importantly, the summary judgment standard contemplates sworn testimony as creating potential fact disputes, and this Court has held that a party cannot wish away a fact dispute merely by dubbing the testimony creating it as "self-serving." *Stewart v. Rise, Inc.*, 791 F.3d 849, 860 (8th Cir. 2015). Under the lenient objective standard of an Eighth Amendment excessive force claim, Evans has created a fact dispute over whether a clearly established violation occurred.

## CONCLUSION

This Court should affirm the district court's order denying Defendants qualified immunity and remand for further proceedings.

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Date: October 8, 2024

*/s/ D Dangaran*
D Dangaran

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,782 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and the Summary of the Case required by this Court, which contains 237 words and is not longer than one page. 8th Cir. R. 28A(i)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font. This brief has been scanned for viruses and is virus-free.

Date: October 8, 2024

*/s/ D Dangaran*
D Dangaran